IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| JONATHAN VILLEGAS-ESCOBAR,<br><br>Plaintiff,<br><br>vs.<br><br>NATHAN KWON, M.D.,<br><br>Defendant. | CIV. NO. 22-00087 JMS-WRP<br><br>ORDER GRANTING DEFENDANT DR. KWON'S MOTION TO DISMISS SECOND AMENDED COMPLAINT, ECF NO. 41 |

**ORDER GRANTING DEFENDANT DR. KWON'S MOTION TO DISMISS SECOND AMENDED COMPLAINT, ECF NO. 41**

**I. INTRODUCTION**

Pro se Plaintiff Jonathan Villegas-Escobar ("Villegas-Escobar") brought this lawsuit pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), alleging that Defendant Dr. Nathan Kwon, the clinical director at the Federal Detention Center in Honolulu, Hawaii ("FDC Honolulu"), violated the Eighth Amendment's prohibition against cruel and unusual punishment by "delaying [a] [g]eneral surgery evaluation consult and proper medical care and treatment." ECF No. 10 at PageID.5.[1]  *See* ECF No. 5 at PageID.41–

---

[1] According to the Federal Bureau of Prisons' online inmate locator, Villegas-Escobar is currently incarcerated at FDC Honolulu.  *See* Federal Bureau of Prisons,

(continued . . .)

PageID.42. Dr. Kwon filed a Motion to Dismiss Second Amended Complaint ("Motion") arguing, among other things, that Villegas-Escobar's claim is not cognizable under *Bivens*.[2] *See* ECF No. 41 at PageID.156–PageID.157; *see also* ECF No. 41-1 at PageID.170–PageID.183. The court agrees that Villegas-Escobar cannot pursue his claim against Dr. Kwon under *Bivens* and, for the following reasons, GRANTS Defendant's Motion, ECF No. 41.[3]

## II. BACKGROUND

Dr. Kwon conducted an initial health assessment of Villegas-Escobar at FDC Honolulu on June 17, 2021. ECF No. 10 at PageID.69. During this assessment, Villegas-Escobar told Dr. Kwon that he underwent two major medical procedures in

---

https://www.bop.gov/inmateloc/ (select "Find By Number"; enter "29856-045"; and select "Search") (last visited Mar. 17, 2023).

[2] Even assuming that Villegas-Escobar's claim is cognizable, Dr. Kwon argues that qualified immunity shields him from personal liability. *See* ECF No. 41 at PageID.157; ECF No. 41-1 at PageID.183–PageID.188. Because no *Bivens* remedy is available to Villegas-Escobar, the court need not reach Dr. Kwon's qualified immunity argument. *See Pettibone v. Russell*, 59 F.4th 449, 457 (9th Cir. 2023) ("Because [plaintiff] has no cause of action under *Bivens*, we need not consider whether [defendant] would be entitled to qualified immunity.").

[3] In the original Complaint, Villegas-Escobar also named as defendants the warden and a unit manager at FDC Honolulu. *See* ECF No. 1 at PageID.1–PageID.2. The court previously dismissed any claims against these individuals. *See* ECF No. 8 at PageID.42–PageID.49. In the SAC, Villegas-Escobar also named as a defendant a nurse at FDC Honolulu. *See* ECF No. 10 at PageID.65. Because Villegas-Escobar's claim against the nurse was unrelated to his claim against Dr. Kwon, the court ordered Villegas-Escobar to elect which claim he wanted to pursue in this lawsuit. *See* ECF No. 12 at PageID.93. Villegas-Escobar chose to pursue his claim against Dr. Kwon. *See* ECF No. 13 at PageID.95.

the past, including an "abdomen hernia mesh" implant.[4]  *Id.*  The procedure was performed in June 2017, while Villegas-Escobar was a pretrial detainee at another facility.  *Id.* at PageID.70; *see also* ECF No. 45 at PageID.207.  Villegas-Escobar told Dr. Kwon that his abdomen was "very painful."  ECF No. 10 at PageID.69.  Although Dr. Kwon renewed Villegas-Escobar's prescription for ibuprofen, Dr. Kwon did not note in Villegas-Escobar's medical records the issues with the hernia mesh.  *Id.*

On an unspecified date, Villegas-Escobar told Dr. Kwon that he was experiencing "extreme abdomen pain and [a] stabbing feeling."[5]  *Id.*  Villegas-Escobar felt "as though the hernia mesh was stabbing [his] abdomen/intestines."

MLP Roberts scheduled a "Radiology offsite consultation" for Villegas-Escobar on January 10, 2022.  *Id.* at PageID.70.  On December 17, 2021, the radiology consultation was changed to a general surgery evaluation.  *Id.*  After Dr. Kwon amended a note in Villegas-Escobar's medical records on December 27, 2021,

---

[4] Surgeons often use surgical mesh to strengthen a hernia repair and reduce the rate of recurrence.  *See* Food & Drug Administration, Hernia Surgical Mesh Implants, https://www.fda.gov/medical-devices/implants-and-prosthetics/hernia-surgical-mesh-implants (last visited Mar. 17, 2023).

[5] Villegas-Escobar states that he met with Dr. Kwon or Mid-Level Practitioner Donna Roberts ("MLP Roberts") (who is not named as a defendant) on November 17, 2021, December 8, 2021, January 11, 2022, February 23, 2022, March 18, 2022, April 1, 2022, and April 13, 2022.  ECF No. 10 at PageID.69.  Villegas-Escobar does not specify, however, during which of these visits he specifically met with Dr. Kwon.

however, the consultation did not take place as scheduled.[6]  *Id.*  Villegas-Escobar subsequently sent two emails to Dr. Kwon on December 30, 2021, and February 28, 2022, describing the discomfort he was feeling.  *Id.* at PageID.69–PageID.70.  Dr. Kwon did not respond to those emails.  *Id.*

On May 9, 2022, the court received the operative pleading in this suit—that is, the Second Amended Complaint ("SAC").  *Id.*  In the SAC, Villegas-Escobar alleges that Dr. Kwon violated the Eighth Amendment's prohibition against cruel and unusual punishment by "delaying [a] [g]eneral surgery evaluation consult and proper medical care and treatment."  *Id.* at PageID.65.  Villegas-Escobar seeks at least three million dollars in damages.  *Id.* at PageID.74.

Dr. Kwon filed the Motion on January 13, 2023, arguing that the SAC should be dismissed because Villegas-Escobar's constitutional tort claim presents a new context, which is not cognizable under the Supreme Court's current *Bivens* framework.  *See* ECF No. 41 at PageID.156–PageID.157; *see also* ECF No. 41-1 at PageID.170–PageID.183.

The court received Villegas-Escobar's Response on January 23, 2023.  ECF No. 45.  In the Response, Villegas-Escobar made further factual allegations, including that he also met with Dr. Kwon on June 16, 2022, and August 12, 2022.  *Id.*

---

[6] Dr. Kwon amended the note to read, "No mention of hernia exam.  Recommend clear documentation and follow-up instructions addressing hernia."  ECF No. 10 at PageID.70.

at PageID.208.  In addition, on June 24, 2022, Villegas-Escobar was taken to the hospital because of his abdomen pain.  *Id.*  Villegas-Escobar then met with a doctor for a follow-up consultation on July 14, 2022.  *Id.*  At the end of this appointment, the doctor stated that the results of a computed tomography ("CT") scan of Villegas-Escobar's abdomen were "consistent with postoperative change," that Villegas-Escobar's "episodes of pain are self[-]resolving," and that Villegas-Escobar had no pain during the examination.  ECF No. 45-5 at PageID.275.[7]  The doctor concluded that there are "[n]o urgent surgical indications at this time."  *Id.*  The court will decide this matter without a hearing pursuant to Local Rule 7.1(d).

### III.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint that fails "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  On a Rule 12(b)(6) motion to dismiss, "the court accepts the facts alleged in the complaint as true," and "[d]ismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged."  *UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 718 F.3d 1006, 1014 (9th Cir. 2013) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)) (alteration in

---

[7] Under Federal Rule of Civil Procedure 12(b)(6), review is generally limited to the contents of the complaint.  *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  "A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment."  *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

original). Conclusory allegations of law, unwarranted deductions of fact, and unreasonable inferences are insufficient to defeat a motion to dismiss. *See Sprewell*, 266 F.3d at 988; *Nat'l Ass'n for the Advancement of Psychoanalysis v. Cal. Bd. of Psychology*, 228 F.3d 1043, 1049 (9th Cir. 2000) (citation omitted). Furthermore, the court need not accept as true allegations that contradict matters properly subject to judicial notice. *See Sprewell*, 266 F.3d at 988.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)) (some alterations in original).

Villegas-Escobar is appearing pro se; thus, the court liberally construes his pleadings. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam*); Eldridge*

*v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987).  The court also recognizes that "[u]nless it is absolutely clear that no amendment can cure the defect . . . a pro se litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend prior to dismissal of the action."  *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995); *see also Rowley v. Bannister*, 734 F.3d 967, 977–78 (9th Cir. 2013).

## IV.  ANALYSIS

Villegas-Escobar brought this suit pursuant to *Bivens* alleging that Dr. Kwon violated the Eighth Amendment's prohibition against cruel and unusual punishment by "delaying [a] [g]eneral surgery evaluation consult and proper medical care and treatment."  *See* ECF No. 10 at PageID.65, PageID.68–PageID.71.  Before the merits of Villegas-Escobar's claim can be reached, the court must first decide whether a *Bivens* remedy is available to Villegas-Escobar.  *See, e.g.*, *Manansingh v. United States*, 2021 WL 2080190, at *8 (D. Nev. May 24, 2021) ("In a constitutional action against a federal officer, a threshold consideration is whether a plaintiff may bring a *Bivens* suit in the first place.").  Because no such remedy exists, the FAC and this action must be dismissed.

**A.    Legal Framework for Determining Whether a *Bivens* Remedy Exists**

While "Congress has made a cause of action available to any person who has suffered 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' at the hands of someone acting under color of state law," it

"has not created a general cause of action to redress violations of the Constitution by *federal* officers." *Pettibone v. Russell*, 59 F.4th 449, 454 (9th Cir. 2023) (quoting 42 U.S.C. § 1983) (alteration in original).

In three cases decided between 1971 and 1980, however, "the Supreme Court held that the Constitution contains an implied cause of action through which plaintiffs can seek damages from federal officers who violate their constitutional rights." *Id.* In *Bivens*, the Court held that a plaintiff could seek damages from Federal Bureau of Narcotics agents who allegedly violated the Fourth Amendment right to be free from unreasonable searches and seizures. 403 U.S. at 397. The Court extended the *Bivens* remedy in *Davis v. Passman*, where a plaintiff alleged that her employer, a Member of Congress, had discriminated against her because of her sex, in violation of the Due Process Clause of the Fifth Amendment. 442 U.S. 228, 230–31 (1979). Finally, in *Carlson v. Green*, the Court held that the estate of a deceased inmate could seek damages from federal prison officials who allegedly violated the inmate's Eighth Amendment right to be free from cruel and unusual punishment by failing to treat severe asthma that ultimately resulted in the prisoner's death. 446 U.S. 14, 16–18 (1980). "These three cases—*Bivens*, *Davis*, and *Carlson*—represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself." *Ziglar v. Abbasi*, 582 U.S. 120, 132 (2017).

The Supreme Court "has made clear that expanding the *Bivens* remedy is now a 'disfavored' judicial activity." *Abbasi*, 582 U.S. at 135 (citation omitted); *Egbert v. Boule*, 142 S. Ct. 1793, 1802 (2022) ("At bottom, creating a cause of action is a legislative endeavor."). Indeed, the Supreme Court has indicated that "if [the Court] were called to decide *Bivens* today, [it] would decline to discover any implied causes of action in the Constitution." *Id*. at 1809. Since 1980, therefore, the Supreme Court "has 'consistently refused to extend *Bivens* to any new context or new category of defendants.'"[8] *Abbasi*, 582 U.S. at 135 (citation omitted).

Now, when asked to imply a *Bivens* remedy, courts must use "caution." *Egbert*, 142 S. Ct. at 1803. If there is even a "single sound reason" to think that Congress might doubt the efficacy or necessity of a damages remedy, courts must refrain from creating it. *Id.* Thus, "'the most important question is who should

---

[8] The Supreme Court has declined to create a *Bivens* remedy in the following cases: a First Amendment suit against a federal employer, *see Bush v. Lucas*, 462 U.S. 367 (1983); a race discrimination suit against military officers, *see Chappell v. Wallace*, 462 U.S. 296 (1983); a substantive due process suit against military officers, *see United States v. Stanley*, 483 U.S. 669 (1987); a procedural due process suit against Social Security officials, *see Schweiker v. Chilicky*, 487 U.S. 412 (1988); a procedural due process suit against a federal agency for wrongful termination, *see FDIC v. Meyer*, 510 U.S. 471 (1994); an Eighth Amendment suit against a private halfway house operator under contract with the BOP, *see Corr. Servs. Corp. v. Malesko*, 534 U.S. 61 (2001); a claim of retaliation by Bureau of Land Management officials against plaintiff for his exercise of Fifth Amendment property rights, *see Wilkie v. Robbins*, 551 U.S. 537 (2007); a suit under the Fifth, Eighth, and Fourteenth Amendments against United States Public Health Service personnel, *see Hui v. Castaneda*, 559 U.S. 799 (2010); an Eighth Amendment suit against prison guards at a private prison, *see Minneci v. Pollard*, 565 U.S. 118 (2012); a Fifth Amendment suit against Department of Justice officials, *see Abbasi*, 582 U.S. at 155; a Fourth and Fifth Amendment suit against a United States Border Patrol agent, *Hernandez v. Mesa*, 140 S. Ct. 735 (2020); and a First and Fourth Amendment suit against a United States Border Patrol Agent, *see Egbert*, 142 S. Ct. at 1793.

decide whether to provide for a damages remedy, Congress or the courts?'" *Id.* (citation omitted). In "most every case," the answer will be Congress. *Id.*

In deciding whether a *Bivens* remedy is available in a particular case, courts apply a two-step framework. *Pettibone*, 59 F.4th at 454. At step one, courts "ask whether the case presents 'a new *Bivens* context.'" *Egbert*, 142 S. Ct. at 1803. At step two, "a *Bivens* remedy is unavailable if there are 'special factors' indicating that the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'"[9] *Pettibone*, 59 F.4th at 454 (citation omitted).

## B.   Villegas-Escobar's Claim Presents a New Context

The Supreme Court's "understanding of a 'new context' is broad." *Hernandez*, 140 S. Ct. at 743. A case presents a new context if it is "different in a meaningful way from previous *Bivens* cases decided by [the Supreme Court]." *Abbasi*, 582 U.S. at 139. The Supreme Court has provided a non-exhaustive list of differences that may be "meaningful" including the rank of the officers involved, the constitutional right at issue, the generality or specificity of the official action, the

---

[9] In *Egbert*, the Supreme Court noted that these two steps "often resolve to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy." 142 S. Ct. at 1803. At least one court of appeals has suggested in dicta that this sentence "appear[s] to alter the existing two-step *Bivens* framework." *Silva v. United States*, 45 F.4th 1134, 1139 (10th Cir. 2022). The Ninth Circuit, however, has stated that *Egbert* only "reiterate[d] the longstanding first step of the *Bivens* question" and "clarified" the second step. *Mejia v. Miller*, _ F.4th _, 2023 WL 2350630, at *4 (9th Cir. 2023). The court therefore applies the two-step framework, as clarified in *Egbert*, to analyze Villegas-Escobar's claim.

extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted, the statutory or other legal mandate under which the officer was operating, the risk of disruptive intrusion by the Judiciary into the functioning of other branches of government, and the presence of potential special factors that previous *Bivens* cases did not consider. *Id.* at 139–40.

The Supreme Court has stated that "[a] claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized." *Hernandez*, 140 S. Ct. at 743. Thus, even where a "case has significant parallels to one of the [Supreme Court's] previous *Bivens* cases, it can present a new context." *Abbasi*, 582 U.S. at 147. In other words, "even a modest extension is an extension." *Id.*; *see Mejia*, 2023 WL 2350630, at *5 ("[R]arely if ever is the Judiciary equally suited as Congress to extend *Bivens* even modestly.").

The Supreme Court's analysis in *Egbert* illustrates these principles. In *Egbert*, a bed-and-breakfast operator and Border Patrol confidential informant alleged, among other things, that a Border Patrol agent used excessive force on him while trying to conduct a search on the plaintiff's property. 142 S. Ct. at 1801. While noting that *Egbert* and *Bivens* involved "similar allegations of excessive force and thus arguably present[ed] 'almost parallel circumstances' or a similar

11

'mechanism of injury,'" the Supreme Court stated that these "superficial similarities [were] not enough to support the judicial creation of a cause of action." *Id.* at 1805.

Here, although Villegas-Escobar's claim has some parallels to the claims in *Carlson*, the specifics of Villegas-Escobar's allegations are dissimilar in both their "nature and severity" from the facts in *Carlson*." *Martinez v. United States Bureau of Prisons*, 2019 WL 5432052, at *9 (C.D. Cal. Aug. 20, 2019), *report and recommendation adopted*, 2019 WL 5424414 (C.D. Cal. Oct. 22, 2019), *aff'd*, 830 F. App'x 234 (9th Cir. 2020).

In *Carlson*, an inmate was diagnosed as a "chronic asthmatic" when he entered the federal prison system. *Green v. Carlson*, 581 F.2d 669, 671 (7th Cir. 1978), *aff'd*, 446 U.S. 14 (1980). The inmate was later hospitalized for eight days because of the condition, and the treating physician recommended that the inmate be transferred to a different facility. *Id.* Despite the doctor's recommendation, the inmate remained in the same facility. *Id.* Then, when the inmate was admitted to the prison hospital with an asthmatic attack, he was not seen by a doctor for eight hours. *Id.* As the inmate's breathing became more difficult, a non-licensed nurse in charge of the prison hospital deserted the inmate to distribute medication elsewhere. *Id.* When the nurse returned, he attempted to use a respirator on the inmate. *Id.* The nurse did this despite being told two weeks earlier that the respirator was broken. *Id.* When the inmate told the nurse that the respirator was making his breathing worse,

12

the nurse administered two doses of a drug contraindicated for someone suffering an asthmatic attack.  *Id.*  A half-hour after the second injection, the inmate suffered a respiratory arrest.  *Id.*  The nurse and another prison official then brought emergency equipment to administer an electric jolt to the inmate, but neither man knew how to operate the machine.  *Id.*  Only at that point was the inmate taken to a hospital, where he was pronounced dead.  *Id.*

Here, Villegas-Escobar's claim differs from those in *Carlson* in at least two important ways.  First, the nature of Villegas-Escobar's claim differs from the claims in *Carlson* because Villegas-Escobar's claim does not relate to Dr. Kwon's medical treatment.  Instead, Villegas-Escobar alleges that Dr. Kwon "delay[ed][a][g]eneral surgery evaluation consult and proper medical care and treatment."  ECF No. 10 at PageID.65.  Although it is well settled that state prisoners can state an Eighth Amendment claim based on a delay or intentional interference with medical treatment, *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014), this was not the basis for the claims in *Carlson*.  Thus, Villegas-Escobar seeks an extension of *Bivens* to an area not addressed in *Carlson*.  *See Lu v. Kwon*, 2023 WL 2456207, at *5–7 (D. Haw. Mar. 10, 2023) (concluding that interference with delivery of CPAP machine was a new context); *Donaldson v. Garland*, 2022 WL 10189084, at *3 (E.D. Cal. Oct. 17, 2022) (finding new context where plaintiff alleged that prison officials

13

interfered with medical care by cancelling surgery), *report and recommendation adopted*, 2022 WL 17722326 (E.D. Cal. Dec. 15, 2022).

Second, the severity of Villegas-Escobar's claim is unlike the claims in *Carlson*. While the court does not minimize the abdomen pain that Villegas Escobar has experienced since 2017, it is not analogous to the medical emergency faced by the inmate in *Carlson* that ultimately resulted in that inmate's death. *See Watanabe v. Derr*, 2023 WL 2500933, at *5 (D. Haw. Mar. 10, 2023) (concluding that pain associated with fractured coccyx and bone chips presented a new context); *Washington v. Fed. Bureau of Prisons*, 2022 WL 3701577, at *5 (D.S.C. Aug. 26, 2022) (noting that "[p]laintiff's *Bivens* claims do not involve a medical emergency, as did *Carlson*, but rather focus on a long term and ongoing course of medical treatment of Plaintiff's chronic, non-fatal condition" in concluding that case presented a new context); *Peguero v. Quay*, 2023 WL 2410882, at *11 (M.D. Pa. Mar. 8, 2023) (concluding that chronic pain caused by two herniated discs, scoliosis, and nerve damage was a new context because it did not involve a "medical life-threatening emergency").

These differences in the "nature and severity" of Villegas-Escobar's claim compared to the claims in *Carlson* are meaningful. *See Lu*, 2023 WL 2456207, at *7; *Martinez*, 2019 WL 5432052, at *9; *see also Prescott v. United States*, 2022 WL 18859316, at *2 (C.D. Cal. Dec. 21, 2022) (concluding that assigning a federal

14

prisoner to an inhospitable bed and refusing to move him even after a doctor's order was issued presented a new context), *report and recommendation adopted*, 2023 WL 2188692 (C.D. Cal. Feb. 22, 2023); *Davis v. Fed. Bureau of Prisons*, 2022 WL 18460704, at *2 (C.D. Cal. Dec. 8, 2022), *report and recommendation adopted*, 2023 WL 405319 (C.D. Cal. Jan. 24, 2023) (concluding that a federal prisoner's claim that defendant performed an unauthorized surgical procedure presented a new context). Indeed, allowing Villegas-Escobar's claim to proceed risks "transforming [the court] into an *ad hoc* medical review board tasked with deciding, with little to no judicial guidance, which medical errors, if any, cross the threshold into constitutional injury."[10] *Washington*, 2022 WL 3701577, at *5.

Furthermore, the Supreme Court has stated that "the presence of potential special factors that previous *Bivens* cases did not consider" is relevant to deciding whether a case presents a new context. *See Abbasi*, 582 U.S. at 140; *see also Egbert*, 142 S. Ct. 1793 ("[W]e have explained that a new context arises when

---

[10] A few courts have allowed to proceed claims involving "medical treatment." *See, e.g.*, *Ibuado v. Fed. Prison Atwater*, 2023 WL 2312395, at *4 (E.D. Cal. Mar. 1, 2023) (claims based on side effects of medication); *Dinkins v. United States*, 2022 WL 16735362, at *6 (C.D. Cal. Aug. 19, 2022) (claims based on failure to treat sinus blockage), *report and recommendation adopted*, 2022 WL 15525746 (C.D. Cal. Oct. 27, 2022). The court does not find the analysis in these decisions persuasive because neither decision addresses the Supreme Court's statement in *Egbert* that "similar allegations," "'almost parallel circumstances,'" or a "similar 'mechanism of injury'" are only "superficial similarities," and they are "not enough to support the judicial creation of a cause of action." 142 S. Ct. at 1805. Nor do the decisions address the Supreme Court's warning that "a plaintiff cannot justify a *Bivens* extension based on 'parallel circumstances with . . . *Carlson* unless he also satisfies the 'analytic framework' prescribed by the last four decades of intervening case law." *Id.* at 1809.

there are 'potential special factors that previous *Bivens* cases did not consider.") (citation omitted).  As explained in the following section, special factors weigh against recognizing a *Bivens* remedy for Villegas-Escobar's claim, including the existence of the Federal Bureau of Prisons' administrative remedy program.  Because this factor was not considered by the Court in *Carlson*, this is another reason that Villegas-Escobar's claim arises in a new context.  *See Hoffman v. Preston*, 2022 WL 6685254, at *1 (9th Cir. Oct. 11, 2022) (unpublished) ("Congress has not authorized a damages remedy in this context, and there are 'rational reason[s],' why it might not, for example, the existence of the Bureau of Prisons' formal review process for inmate complaints.") (citation omitted and brackets in original); *Hurst v. Dayton*, 2023 WL 2526460, at *5 (D. Haw. Mar. 15, 2023) (dismissing claim against prison official in part because the BOP's administrative remedy program provides an alternative remedy).

        For all these reasons, Villegas-Escobar's claim is meaningfully different from the claims in *Carlson*, and the court must proceed to step two.

**C.**     **Special Factors Counsel Against Recognizing a *Bivens* Remedy**

        "[I]f a claim arises in a new context, a *Bivens* remedy is unavailable if there are 'special factors' indicating that the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'"  *Egbert*, 142 S. Ct. at 1803 (citation omitted).  Thus, at step two,

"[a] court faces only one question: whether there is *any* rational reason (even one) to think that Congress is better suited to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Id.* at 1805 (citation omitted).  "If there is even a single 'reason to pause before applying *Bivens* in a new context,' a court may not recognize a *Bivens* remedy." *Id.* (citation omitted).  In conducting this analysis, courts must ask "'broadly' if there is any reason to think that 'judicial intrusion' into a given field might be 'harmful' or 'inappropriate.'" *Id.* (citation omitted).  If there is such a reason "or even if there is the '*potential*' for such consequences, a court cannot afford a plaintiff a *Bivens* remedy." *Id.* at 1805–06 (citation omitted).  This will be the outcome in "most every case." *Id*. at 1803.

For example, "[i]f there are alternative remedial structures in place, 'that alone,' like any special factor, is reason enough to 'limit the power of the Judiciary to infer a new *Bivens* cause of action.'" *Id.* at 1804.  It does not matter whether a *Bivens* remedy would disrupt the remedial scheme, nor does it matter whether the court should provide a remedy for a wrong that would otherwise go unaddressed.  *Id.*  Likewise, "it does not matter that 'existing remedies do not provide complete relief.'" *Id.* (citation omitted).  "So long as Congress or the Executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a *Bivens* remedy." *Id.* at 1807.

17

Here, the court cannot recognize a *Bivens* remedy because alternative remedies are available to Villegas-Escobar. First, the Executive, through the Federal Bureau of Prisons, has an alternative remedial program for federal prisoners like Villegas-Escobar. *See* 28 C.F.R. § 542.10(a) ("The purpose of the Administrative Remedy Program is to allow an inmate to seek formal review of an issue relating to any aspect of his/her own confinement."); *see also Malesko*, 534 U.S. at 74 (concluding that *Bivens* remedy was unavailable, in part, because "[i]nmates . . . have full access to remedial mechanisms established by the BOP, including . . . grievances filed through the BOP's Administrative Remedy Program"); *Hoffman*, 2022 WL 6685254, at *1 ("Congress has not authorized a damages remedy in this context, and there are 'rational reason[s],' why it might not, for example, the existence of the Bureau of Prisons' formal review process for inmate complaints.") (citation omitted and brackets in original).

Second, Congress provided an alternative remedy through the Federal Tort Claims Act ("FTCA"). *See Schwarz v. Meinberg*, 761 F. App'x 732, 734–35 (9th Cir. 2019) (identifying the FTCA as an alternative process available to federal prisoners); *Prescott*, 2022 WL 18859316, at *2 ("[A]ggrieved federal prisoners can bring suit for damages against the United States for the torts of its federal employees under the [FTCA]."); *Donaldson*, 2022 WL 10189084, at *3 ("[P]laintiff has alternative remedies available to him, including the Bureau of Prisons administrative

18

grievance process and a federal tort claims action."); *MT v. United States*, 2023 WL 2468948, at *13 (S.D. Cal. Mar. 10, 2023) ("[T]he alternative remedy available through the FTCA constitutes a special factor that forecloses Plaintiffs' *Bivens* claim.").

While a single alternative remedy is sufficient to foreclose a *Bivens* remedy, at least two are available to Villegas-Escobar. Thus, the Court cannot "second-guess" the judgments made by Congress and the Executive "by superimposing a *Bivens* remedy." *Egbert*, 142 S. Ct. at 1807; *see also MT v. United States*, 2023 WL 2468948, at *13 (S.D. Cal. Mar. 10, 2023) ("[T]he alternative remedy available through the FTCA constitutes a special factor that forecloses Plaintiffs' *Bivens* claim.").

As the Supreme Court has stated, "in all but the most unusual circumstances, prescribing a cause of action is a job for Congress, not the courts." *Id.* at 1800. This case does not present the unusual circumstances required to recognize a *Bivens* remedy.

## V. CONCLUSION

Because Villegas-Escobar's claim arises in a new context and special factors weigh against recognizing a new *Bivens* remedy, Dr. Kwon's Motion, ECF No. 41, is GRANTED for failure to state a claim upon which relief can be granted. Because amendment would be futile, the SAC is DISMISSED without leave to

amend.  *See, e.g.*, *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011) (explaining that dismissal without leave to amend is proper when amendment would be futile).  The Clerk of Court is DIRECTED to close the case and enter judgment in favor of Defendants.

        IT IS SO ORDERED.

        DATED:  Honolulu, Hawaii, March 20, 2023.



        /s/ J. Michael Seabright
        J. Michael Seabright
        United States District Judge

*Villegas-Escobar v. Derr*, Civ. No. 22-00087 JMS-WRP, Order Granting Motion to Dismiss Second Amended Complaint, ECF No. 41